FILED
2024 Aug-06  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
8/2/2022 2:42 PM
20-CV-2022-900151.00
CIRCUIT COURT OF
COLBERT COUNTY, ALABAMA
MARK R. EADY, CLERK

## IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

| | |
|---|---|
| COLBERT COUNTY, ALABAMA, ) | |
| a Political Subdivision of the State ) | |
| of Alabama and the COLBERT ) | |
| COUNTY WATER DEPARTMENT, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action Number: _____ |
| ) | |
| 3M COMPANY, INC., ) | |
| DAIKINAMERICA, INC., RALPH G. ) | |
| WERLING, an individual, DYNEON, ) | |
| LLC, TORAY FLUOROFIBERS ) | |
| (AMERICA), INC., BFI WASTE ) | |
| SYSTEMS OF ALABAMA, LLC, ) | |
| BFI WASTE SYSTEMS OF NORTH ) | |
| AMERICA, LLC, JUSTIN WHITE, an ) | |
| individual, ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiffs Colbert County, Alabama and the Colbert County Water Department (collectively "Plaintiffs"), bring this action against the above-captioned Defendants and set forth in detail the parties, facts, legal claims and damages with particularity, as follows:

## **PARTIES**

1.      Plaintiff Colbert County, Alabama, is a Political Subdivision of the State of Alabama, which operates various departments to enhance the health, safety and general well-being of the citizens of the County.

2.      Plaintiff Colbert County Water Department is a department of Colbert County that, among other responsibilities, provides water to the citizens of Colbert County.

Colbert County Water Department is located at 2750 Highway 20 in Tuscumbia, Alabama. The Colbert County Water Department owns and operates a water treatment plant located at 16531 US-72, Tuscumbia, AL. The Colbert County Water Department owns and operates a water intake on the banks of the Tennessee River which draws water from the river and pumps water to the water treatment plant for treatment.

3.     Defendant, 3M Company, Inc. ("3M"), is a foreign corporation organized under the law of the State of Delaware and qualified to do business in the State of Alabama. 3M has, since 1960, operated a manufacturing facility in Decatur, Alabama that manufactures and/or uses perfluorochemicals and products.

4.     Defendant, Daikin America, Inc. ("Daikin"), is a foreign corporation qualified to do business in Alabama, and is operating a manufacturing facility in Decatur, Alabama, where it manufactures and/or uses perfluorochemicals and products.

5.     Defendant, Ralph G. Werling, is an individual who resides at 3220 Sweetbriar Road Southwest in Decatur, Alabama. Mr. Werling was the Director of Engineering of Daikin's Decatur plant and also served as environmental manager. Mr. Werling oversaw the engineering, manufacturing and use of fluoropolymers at Daikin's Decatur plant.

6.     Defendant, Dyneon, LLC ("Dyneon"), is a wholly owned subsidiary of Defendant 3M, a foreign corporation, licensed to do business in Alabama and doing business in Decatur, Alabama at all times, where it manufactures and/or uses perfluorochemicals and products.

7.     Defendant, Toray Fluorofibers (America) Inc., ("Toray"), is a foreign corporation qualified to do business in Alabama and is operating a manufacturing facility in Decatur, Alabama, where it manufactures products with perfluorochemicals or otherwise used these chemicals as part of its manufacturing processes.

8.     Defendant, BFI Waste Systems of Alabama, LLC (hereinafter "BFI Alabama") is a limited liability corporation organized and existing pursuant to the law of the State of Delaware, with its principal place of business in Huntsville, Alabama.

9.     Defendant, BFI Waste Systems North America, LLC (hereinafter "BFI North America"). BFI North America is a registered LLC with the State of Alabama, with its principal place of business in Phoenix, Arizona.

10.     Defendant Justin White is an individual residing at 381 Boys Ranch Road, Hartselle, Alabama.  Mr. White is the Landfill Manager for the BFI Morris Farms Landfill and is responsible for ensuring that the BFI landfill is operated, managed, and/or maintained so that PFAS contaminated leachate from the landfill is not discharged into the environment in violation of ADEM permit requirements.

## STATEMENT OF THE CASE

11.     Plaintiffs have and continue to be damaged due to the negligent, willful, and wanton conduct of the Defendants. The Defendants are responsible for causing a continuous nuisance and trespass as a result of the Defendants' past and present discharge and/or release of toxic chemicals, perfluorinated compounds, perfluorochemicals, polyfluorochemicals, perfluoroalkyl substances, polyfluoroalkyl substances (collectively referred to as "PFAS"), related chemicals that degrade to PFAS/PFOA/PFOS, and any

precursors to PFAS/PFOA/PFOS, including, but not limited to, perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), GenX, HFPO-DA, NEtFOSAA, NMeFOSAA, PFBS, PFDA, PFDoA, PFHpA, PFHxS, PFNA, PFTrDA, PFTA, PFUnA, 11Cl0PF3OUdS, 9Cl-PF3ONS, ADONA, PFPeS, PFHpS, 4:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 6:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 8:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), PFBA, PFPeA, PFMBA, PFMPA, PFEESA, PTFE and NFDHA (hereinafter collectively referred to as "PFCs").

12.     Colbert County and the Colbert County Water Department ("CCWD") own and operate a water treatment facility that depends on the Tennessee River for providing safe drinking water to the public, comprised of residential and commercial customers.  The CCWD also wholesales water to other water utilities who, in turn, provide water to their customers.  CCWD is the owner of land adjacent to the Tennessee River located in Colbert County, a water treatment plant in Colbert County and CCWD also utilizes a raw water intake on the Tennessee River located in Colbert County as its primary water source.

13.     Defendants 3M, Daikin, Dyneon and Toray have in the past and/or are currently operating manufacturing facilities related to the use PFCs. Defendants' use PFCs as part of manufacturing processes or otherwise supply PFCs to various industries. The BFI defendants own and operate landfills that discharge PFCs into the Tennessee River directly or via leachate disposal into wastewater treatment plants.  These chemical manufacturing facilities, landfills and/or contaminated wastewater treatment plants are located upstream of CCWD's water intake, in or near the City of Decatur, Alabama and/or Morgan and Lawrence Counties. Industrial wastewater discharged in the past and/or

4

currently from Defendants' manufacturing facilities contains high levels of PFC contaminants. PFCs resist degradation during processing at wastewater treatment facilities and ultimately contaminate the Tennessee River.

14.     Defendants' individually, and collectively, have caused or contributed to cause, PFC pollution in the waters in and around Decatur, Alabama, and downstream on the Tennessee River in Colbert County. Defendants' PFCs and PFAS cannot be adequately removed for CCWD's water supply—the Tennessee River—by existing water treatment processes and technologies presently in use and available at CWWD's facility.

15.     As a direct and proximate result of Defendants' contamination of the portions of the Tennessee River in Colbert County from where CCWD withdraws water, CCWD has and will continue to be damaged. CCWD has suffered, and will continue to suffer, substantial economic and consequential damage, including, but not limited to, expenses associated with testing, monitoring, installation of temporary emergency filtration and pumping systems; pilot program costs associated with identification of a permanent filtration system; costs associated with the purchase, installation and future operation costs associated with a permanent filtration system capable of removing Defendants' PFAS from the water; costs associated with remediating plaintiffs' existing treatment facilities; damage to goodwill and reputation; and lost revenue and sales. In addition, Plaintiffs seek past, present and future engineering, operating and maintenance costs.

16.     The Plaintiffs seek compensatory and punitive damages to the fullest extent allowed by Alabama law. Plaintiffs seek compensatory damages to identify and fund filtration equipment, piping, and adequate permanent facilities to operate state of the art

filtering systems sufficient to remove all PFAS and PFCs from river water relied on by the Plaintiffs for their customers and all people who reply on the CCWD to provide clean, safe drinking water.

## JURISDICITON AND VENUE

17.     Jurisdiction and Venue are proper in the Circuit Court of Colbert County, Alabama because the defendants' wrongful conduct has jointly and severally caused damage to the Plaintiff in Colbert County exceeding $10,000.00 as alleged herein and Plaintiff will continue to suffer damages in Colbert County, Alabama in the future. Plaintiff's real property which is the subject of this action is situated in Colbert County, Alabama, including a water treatment plant located at 16531 US-72, Tuscumbia, AL 25674, and associated water intake on the Tennessee River in Colbert County.   Further, some the named defendants do business by agent in Colbert County.

18.     Plaintiffs assert no federal causes of action and disclaim any federal causes of action.  Complete diversity does not exist between all plaintiffs and all defendants.  The Plaintiffs make no claim that the manufacture or use of fire fighting foam ("AFFF") in any way caused or contributed to their damages or the claims asserted in this lawsuit.  Plaintiffs expressly disclaim that they have suffered any damages arising from or associated with AFFF manufacture, use and/or disposal by any of the named defendants or any other entities.

## FACTUAL ALLEGATIONS

## THE TENNESSEE RIVER

19.    The Tennessee River is the longest and largest river in the State of Alabama. The headwaters of the river begin in East Tennessee, but much of the river's 700 miles flow across the State of Alabama from Jackson County in the east to Colbert County and the Mississippi state line in the west.

20.    Over a dozen Alabama counties rely on the Tennessee River as the source of their drinking water, but PFAS pollution caused by the Defendants has jeopardized the safety of the Tennessee River as an ongoing source of drinking water for the residents of Colbert County, Alabama.

21.    Upstream from Colbert County, on the southern bank of the Tennessee River in Decatur, Alabama, Defendants 3M Company, Inc.; Daikin America, Inc.; Dyneon, LLC; and Toray Fluorofibers (America) Inc., operate manufacturing facilities that discharge PFAS into the river.  The BFI defendants operate the Morris Farm landfill that has accepted PFAS contaminated wastes from the defendants and thereafter discharged PFAS contaminated leachate into the Tennessee River.  In some instances, the discharges began over fifty (50) years ago and yet continue to this day.  In addition to these discharges of PFAS effluent, there are also landfills, dumpsites, and sludge application areas that contain dangerously high levels of PFAS that are washed into the river through various streams and tributaries from sites in Lawrence, Morgan, and Limestone Counties.

22.    In the 1970s, 3M found fluorochemicals present in bluegill fish exposed to industrial effluent discharged into the Tennessee River from 3M's Decatur plant.  By 1979,

3M and other defendants learned of high levels of fluorochemicals that were present in the river downstream of their effluent discharge points. In another 3M study from the same timeframe, testing revealed that fish caught at Wheeler Dam and subsequently analyzed were found positive for the presence of fluorochemicals that bioaccumulated (built-up/increased) in fish tissue over time. The fish tested by 3M were obtained 26 miles downstream of the 3M Decatur plant.

23.    Based in large part to the presence of PFAS in the Tennessee River, ADEM placed Wheeler Reservoir from 5 miles upstream of the Elk River to the Joe Wheeler Dam on the State of Alabama's list of impaired waters.[1]

24.    Thirteen miles downstream from the defendants Decatur manufacturing facilities, the West Morgan-East Lawrence Water Authority ("WMEL") raw water intake on the Tennessee River supplies thousands of residents of Lawrence, Morgan and Cullman Counties with drinking water. In 2015, WMEL sued 3M, Daikin and others due to the presence of dangerous amounts of PFAS in the Tennessee River that could not be removed through conventional filtration. In 2016, the Superintendent of WMEL issued a "do not drink warning" to thousands of customers because levels of PFAS from the Tennessee River exceeded the EPA 2016 Lifetime Health Advisory ("LHA"). Upon settlement of its lawsuit, WMEL now has a Reverse Osmosis system combined with a Granular Activated

---

[1]    2014 Alabama 303(d);
       2016 Alabama 303(d);
       2018 Alabama 303(d); @ ADEM, http://adem.alabama.gov/programs/water/303d.cnt

Carbon filtration system that remove the harmful PFAS pollution placed in the river by the Defendants.

25.     3M, Daikin, Dyneon, Toray, the BFI defendants and others have been sued in other cases and have recently settled a class action in the Circuit Court of Morgan County, Alabama with the City of Decatur and other plaintiffs for damages caused by PFAS pollution to area land and water supplies. Plaintiffs in this action "opted out" of the Defendants' Class Action Settlement in the case of *James E. St. John, Jr., et al. v. 3M Company, et al.* entered in December of 2021 in the Circuit Court of Morgan County, Alabama, Civil Action No.:   52-CV-02-000408. The Plaintiffs were not offered any monetary relief in the *St. John* class action settlement, nor provided relief from the PFAS pollution that continues to harm the safety of the Plaintiffs' supply of water from the Tennessee River, and are not bound by any release or limit to recover the damages that are being claimed in this action.

26.     Beginning in 2020, the Alabama Department of Environmental Management ("ADEM"), implemented a PFAS sampling program to identify harmful pollutants in the water supplies of public utilities across the State of Alabama.  Due to the pollution presence from PFAS released in the Tennessee River by Defendants for decades, the levels of PFAS found in Colbert County's drinking water are many times higher than the current EPA Heath Advisory for safe drinking water.

27.     Despite current remediation efforts agreed by the Defendants and otherwise ordered by ADEM, the PFAS pollution problem on the Tennessee River is not going away. Based upon the best available science, the Environmental Protection Agency ("EPA")

determined PFAS is much more persistent, bioaccumulative and toxic than first thought, and the Tennessee River is a major impact area for PFAS pollution.

## **PFOS/PFOA**

28.    Per- and polyfluoroalkyl substances ("PFAS") are considered "pollutants" pursuant to the Alabama Water Pollution Control Act ("AWPCA").  Two of the most prominent PFAS substances include PFOS and PFOA.  There are thousands of other related PFAS substances, all of which are man-made and not naturally occurring substances.

29.    According to the EPA, 3M Company was the sole manufacturer of PFOS in the United States and the principal manufacturer of PFOS worldwide.  Defendants 3M, Daikin and Torey all manufactured and/or used PFOA and other PFAS substances as part of their manufacturing.

30.    The EPA began an investigation into PFOS in 1999 after receiving data that "PFOS was persistent, unexpectedly toxic, and bioaccumulative (PBT)." Federal Register/Vol. 68, 2003.

31.    During its investigation of 3M, the EPA disclosed that "following negotiations with EPA, 3M…announced that it will voluntarily phase out perfluorooctanyl sulfonate ("PFOS") chemistry."   The EPA determined that PFOS was toxic and accumulated to a high degree in humans and animals.  The EPA's preliminary risk assessment found unacceptable margins of exposure for workers and possibly the general population exposed to PFOS.

32    The EPA concluded that "PFOS represents an unacceptable technology that should be eliminated to protect human health and the environment from potentially severe

long-term consequences." Shortly thereafter, the EPA expanded its investigation to perfluorooctanoic acid (PFOA), stating "EPA was concerned in part because 3M had also found PFOA in human blood during the studies on PFOS."

33.    After 3M withdrew PFOS and PFOA from the market, defendants like Daikin, Dyneon and Torey continued to manufacture and/or use PFOA with knowledge that the substances had been withdrawn by 3M due to environmental and potential health risks to the public.

34.    Earlier this year, the EPA has updated its 2016 Health Advisory for PFOS and PFOA in drinking water to .02 ppt for PFOS and .04 ppt for PFOA. Levels of these two "forever chemicals" are present in Colbert County's drinking water in amounts much higher than the EPA's advisory. Testing levels indicate combined PFOS and PFOA readings between 30 ppt and 40 ppt in multiple water quality tests.

35.    PFAS are known to the EPA, ADEM and the Defendants as "forever chemicals" because these man-made chemicals persist in the environment for extremely long periods and do not degrade like other chemicals. PFAS will accumulate in the human body through the process of bioaccumulation. In fish and mammals, PFAS accumulates, builds, and increases though bio-magnification.

36.    Since PFAS do not degrade naturally and are synthetic "forever chemicals" the PFAS released into the Tennessee River, five (5), ten (10), or even twenty (20) years ago are still present and are still causing pollution that is a threat to public health. Unless the chemicals are removed by very specific filtration methods, PFAS will continue to be present in the water used by the Plaintiffs to provide to their customers.

37.     PFAS chemicals such as PFOS and PFOA are referred to as C-8 chemicals because they contain eight (8) fluorinated carbon atoms. Defendants knew that because of the strong carbon-fluorine bond in PFAS chemicals that they would not degrade naturally in the environment. In addition to the fact that PFAS does not degrade naturally, it migrates through surface water and groundwater, which allows PFAS to travel long distances while causing extensive contamination.

38.     In announcing the new Health Advisory for PFAS, this past June 15, 2022, the EPA Administrator, Michael Regan, stated, "People on the front-lines of PFAS contamination have suffered for far too long…that's why EPA is taking aggressive action." The people of Colbert County, Alabama rely on the Tennessee River for their drinking water and are on the "front lines" of PFAS pollution. The Plaintiffs seek relief to provide clean safe drinking water for their customers and the people of Colbert County, Alabama for them in this action.   C-6 and C-4 PFAS chemicals are present in large quantities in the Tennessee River in addition to C-8s.

39.     PFAS, especially PFOS and PFOA, are harmful at extremely low levels. Once PFOS and PFOA were outlawed through EPA regulation, the Defendant chemical manufacturers created and/or sourced other forms of PFAS to substitute for PFOS and PFOA, which were also referred to as C-8 chemicals. Substitute PFAS products, known as C-6 and C-4 chemicals, have also been determined to be harmful to humans and the environment.

40.     Consumption of drinking water is a primary pathway of human exposure to PFAS. Conventional wastewater treatment cannot remove PFAS in significant amounts.

Once PFAS pollution occurs, it can only be removed to safe consumption levels through implementation of advanced water treatment processes, such as reverse osmosis.

## 3M AND DYNEON

41.      3M was the primary manufacturer of PFAS chemicals in the United States from the 1940s through the early 2000s. 3M is the only known manufacturer of PFOS and PFHxS in the United States and was also a major manufacturer of PFOA. All three of these chemicals were manufactured at 3M's facility in Decatur, Alabama.  Dyneon is a wholly owned subsidiary of 3M and manufactured or used these same chemicals.

42.      The manufacturing process used by 3M to create PFAS is referred to as "electrochemical fluorination", which creates a product that contains PFOS, PFOA, PFNA, PFHxS, and/or PFHpA.

43.      As early as the 1960s, 3M understood from its internal research that PFAS would persist in the environment and would not degrade. By 1975, 3M determined that PFAS was found in human sera-chemicals, such as PFOA, or "widespread in human plasma."

44.      Despite internal warnings from some of its scientists and researchers about PFAS, 3M failed to disclose risk associated with these chemicals to regulators or the public. 3M concealed much of its awareness of the risk associated with PFAS until it was pressed to do so through an EPA investigation in the late 1990s.

45.      In the course of the EPA investigation, and in response to pressure from the EPA, 3M announced that it was phasing out the manufacture of PFOS in 2000. In stark contrast to concerns by the EPA determining that PFAS was persistent, bioaccumulative,

and toxic, 3M told the public that its "products are safe", and that they would neither cause harm to the environment or humans.

46.     By 2006 the EPA cited 3M for two-hundred and forty-four (244) violations of the Toxic Substances Control Act and cited 3M for failing to notify the agency about potential harm caused by its PFAS chemicals in addition to late reporting of "substantial risk information." 3M was fined 1.52 million dollars for the violations. 3M knew for many years that its wastewater, surface water runoff, sewer discharges and waste products placed in area landfills (many unlined) would contaminate the environment and result in harm to drinking water.

## **DAIKIN**

47.     By the early 1990s, Daikin was utilizing PFAS to manufacture products at its Decatur, Alabama plant. Daikin knew of research showing the presence of PFAS in human sera and that PFOA was both bio-persistent and bioaccumulative. Daikin knew that placing manufacturing wastewater with PFAS contamination into public sewer lines and depositing wastewater and surface water runoff into the Tennessee River would result in PFAS pollution.

48.     Daikin knew that 3M had withdrawn PFOA from the market and that 3M had ceased PFOA production.  Daikin sought to take advantage of 3M's withdrawal from the market and actually promoted its PFAS products as a safe alternative and also continued manufacturing PFAS contaminating products.  These activities continued for years until it was brought to the attention of the company that their wastewater should be "incinerated" and not allowed to be placed in the environment.

49.     Like 3M, Daikin knew for decades of health and environmental risk of PFAS, but instead of informing the public, regulators, or its own customers about environmental risk associated with its products, Daikin covered up this information and promoted PFAS and PFAS-containing products as being safe.

## RALPH WERLING

50.     During his employment with Daikin, defendant Ralph Werling knew that the manufacturing and processing of fluoropolymer chemicals results in the creation of wastewater containing PFAS. He knew that PFOA, a C-8 chemical that is a persistent, bioaccumulative and toxic "forever chemical" resulted from the Daikin manufacturing process which in turn was included in wastewater that was either discharged directly to the Decatur Wastewater Treatment Plant or discharged directly into the Tennessee River. The end result of either alternative resulted in PFAS pollution of the River.

51.     Mr. Werling worked at the Daikin Decatur plant beginning in the early 1990s, had responsibility for plant engineering, was later tasked with environmental manager responsibility, had responsibility for plant process and production but took no action to stop PFAS waste pollution from being dumped into the Tennessee River. Mr. Werling failed to manage the Daikin plant so as to limit or stop PFAS contamination of the Tennessee River.  By the time the practice was stopped by an official with Daikin's parent company in Japan, who directed the Decatur plant to immediately begin incinerating its wastewater, substantial and irreversible environmental damage had occurred. Due to the persistence of the PFAS pollution, these discharges of Daikin's forever chemicals will not degrade but continue in the environment indefinitely.

## **TORAY**

52.     Torey Fluorofibers America, Inc., ("Toray") owns and operates a fluorofiber manufacturing facility located at 2032 State Highway 20, Decatur, Alabama.  Toray is the only manufacturer of Teflon branded PTFE fibers commercially available in the world.  Toray used PFAS substances, including but not limited to PFOA, as part of its PTFE manufacturing process. Toray continues to use PFAS as part of its manufacturing process including HFPO-DA.  These PFAS substances used by Toray as part of its manufacturing process are discharged in wastewater and wash water and have contaminated the Tennessee River and caused contamination of the plaintiffs' drinking water supply in Colbert County.

## **BFI**

53.     BFI Waste Systems of Alabama, LLC and BFI Waste Systems of North America, LLC ("BFI Defendants") own and operate Morris Farm Landfill in Lawrence County, Alabama. Since at least the 1990s, the BFI Defendants have received commercial and industrial wastes containing PFAS.  The BFI Morris Farms Landfill is contaminated with PFAS and the leachate generated by the landfill is contaminated with PFAS.  Leachate from the landfill has been disposed of by BFI in wastewater treatment plants in Lawrence and Morgan County which are not capable of removing the PFAS from the leachate.  These wastewater treatment plants have in turn discharged the PFAS contained in the BFI leachate into the Tennessee River upstream of Plaintiff's water intake and treatment facility.  BFI has failed and refused to take action to pre-treat its landfill leachate to remove PFAS even though they have been warned about the environmental harm they are causing.

54.     In addition, PFAS contaminated leachate from the BFI landfill has been directly discharged via seeps, surface water runoff and/or groundwater into creeks and streams surrounding the landfill such as Dry Creek which flow into the Tennessee River upstream of Plaintiff's water intake.  The direct discharge of leachate is a violation of BFI's ADEM permits.  As recently as April of 2022, BFI received a Notice of Violation from ADEM for discharging leachate from the Morris Farms Landfill in violation of BFI's permit.

## JUSTIN WHITE

55.     Defendant Justin White is the BFI Morris Farms Landfill Manager.  Mr. White manages and oversees the Morris Farms Landfill operation.   Mr. White is responsible for ensuring that leachate is not discharged directly from the landfill in violation of the ADEM permit.  As landfill manager, Mr. White is responsible for permit compliance, proper landfill management and collection and control of leachate.  Section 1.F of the Morris Farms Landfill permit provides in part that "the landfill must be maintained and operated to minimize the possibility of an unplanned sudden or nonsudden release of contaminants (including leachate) to air, soil, surface water or groundwater, that may threaten human health or the environment."  Mr. White has failed to manage, maintain and/or otherwise operate the landfill so as to prevent PFAS contaminated leachate from contaminating plaintiff's water supply and causing the damages complained of herein.

## COUNT I – NEGLIGENCE

56.     Plaintiffs incorporate all prior paragraphs by reference as if fully set forth and restated herein.

57.     Defendants owed a duty to Plaintiffs to exercise reasonable care in their manufacturing procedures and waste-handling and disposal operations to prevent the PFAS contamination of the Plaintiff's water supply and water treatment plant and related property.

58.     As described in detail herein above, Defendants breached their duty to exercise due care and reasonable care owed to the Plaintiffs. The Defendants breaches of their duty constitute negligence, willful and/or reckless conduct.

59.     As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and omissions, the Plaintiffs have been damaged and will incur expenses of now and in the future.

WHEREFORE, Plaintiffs demand judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by struck jury in an amount in excess of the jurisdictional minimum of this Court, including past and future damages, plus interest in all recoverable costs.

## COUNT II – PUBLIC NUISANCE

60.     Plaintiffs reallege all prior paragraphs as if fully restated and set forth herein.

61.     Defendants have created a public nuisance by failing to prevent the contamination of the Plaintiffs' water supply, water treatment plant and related property with Defendants' PFAS, thereby causing Plaintiffs hurt, inconvenience and harm. The nuisance is ongoing.

62.     The contamination of the Plaintiffs water supply, water treatment plant and related property constitutes a public nuisance and, in addition to the special damages

suffered by the Plaintiffs, the Defendants PFAS contamination has created a condition which threatens the health and well-being of residents of Colbert County including Plaintiffs' customers.

63.    It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at Plaintiff's intake site. The nuisance has caused substantial damage and will continue to cause damages until it is satisfactorily abated by necessary improvements of filtration technology which will allow for the removal of PFAS from the water supply in Colbert County.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

## COUNT III – PRIVATE NUISANCE

64.    Plaintiff re-alleges all prior paragraphs as if set forth fully herein.

65.    Defendants have created a nuisance by their failure to prevent the contamination of PFAS into the public waters throughout the State of Alabama including the Plaintiff's water supply, thereby causing Plaintiff hurt, inconvenience, and harm.

66.    The contamination of the water at Plaintiff's intake site, treatment plant and related property constitutes a private nuisance depriving Plaintiff of its ability to deliver clean and uncontaminated water to its customers.  The nuisance is ongoing.

67.    It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at Plaintiff's intake site. The

nuisance has caused substantial damage and will continue to cause damages until it is satisfactorily abated by way of necessary improvements of filtration technology which will allow for the removal of PFAS from the water supply in Colbert County.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

## COUNT IV – TRESPASS

68.    Plaintiff re-alleges all prior paragraphs as if set forth fully herein.

69.    Plaintiff owns and occupies property used to serve its water customers, including a water treatment plant, water intake, water distribution system, and offices.

70.    Defendants' intentional acts in failing to contain the discharge of PFAS knowing that they would contaminate the water supplies, caused an invasion of Plaintiff's property by Defendants' chemicals, which has affected and is affecting Plaintiff's interest in the exclusive possession of its property.

71.    Plaintiff did not consent to the invasion of its property by Defendants' chemicals.

72.    Defendants knew or should have known that their PFAS would contaminate the water supply and result in an invasion of Plaintiff's possessory interest in their property.

73.    Defendants' trespass is continuing.

74.    Defendants' continuing trespass has impaired Plaintiff's use of its property and has caused it damages by diminishing its value.

20

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

## COUNT FIVE – WANTONNESS AND PUNITIVE DAMAGES

75.     Plaintiff re-alleges all prior paragraphs as if restated herein.

76.     Defendants owed a duty to Plaintiff to exercise due and reasonable care in their manufacture, distribution, supply, sales and/or waste handling and disposal of PFAS to users throughout the State of Alabama and to prevent the discharge of PFAS into the water supply.

77.     In breaching the duties described above, Defendants acted in a wanton, willful, and reckless manner.

78.     Defendants knew or should have known the danger to Plaintiff created by Defendants' conduct, practices, actions, and inactions.

79.     Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on the Plaintiff.

80.     Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard of the known risk of harm to the Plaintiff.

WHEREFORE, Plaintiff demands judgment for punitive damages against all Defendants, jointly and severally, in an amount to be determined by a struck jury in an amount in excess of the jurisdictional minimum of this Court, past and future, plus interest and costs.

## <u>JURY DEMAND</u>

PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

**Respectfully submitted this August 2, 2022.**

*/s/ Jeffrey E. Friedman*
Jeffrey E. Friedman (FRI018)
jfriedman@friedman-lawyers.com
Lee T. Patterson (PAT060)
lpatterson@friedman-lawyers.com
Matt D. Conn (CON062)
mconn@friedman-lawyers.com
*Counsel for Plaintiffs*

**OF COUNSEL:**
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Ph# 205-278-7000
Fax# 205-278-7001

 */s/  Jeffrey L. Bowling (w/permission)*
Jeffrey L. Bowling (BOW037)
jeffbrbpc@bellsouth.net

 */s/ John A. McReynolds (w/permission)*
John A. McReynolds (MCR008)
johnbrbpc@bellsouth.net
*Co-Counsel for Plaintiffs*

**OF COUNSEL:**
BEDFORD, ROGERS, BOWLING & MCREYNOLDS, P.C.
P.O. Box 669
Russellville, AL 35653-0669
Ph# 256-332-2880
Fax# 256-332-7821

*/s/ D. Edgar Black  (w/permission)*
D. Edgar Black (BLA121)
edgar.black@blackandhughston.com
*Co-Counsel for Plaintiffs*

**OF COUNSEL:**
BLACK & HUGHSTON, P.C.
406 Avalon Avenue
Muscle Shoals, AL 35661-2808
Ph# 256-383-5707
Fax# 256-383-5759

### DEFENDANTS TO BE SERVED BY CLERK OF COURT THROUGH CERTIFIED MAIL AS FOLLOWS:

**3M COMPANY, INC.**
c/o The Corporation Co.
2000 Interstate Park Dr.
Montgomery, AL 36109

**DAIKIN AMERICA, INC.**
c/o The Corporation Co.
2000 Interstate Park Dr.
Montgomery, AL 36109

**RALPH G. WERLING**
3220 Sweetbriar Road SW
Decatur, AL 35603

**DYNEON, LLC**
c/o The Corporation Co.
2000 Interstate Park Dr.
Montgomery, AL 36109

**TORAY FLUOROFIBERS (AMERICA), INC.**
c/o Registered Agent, Garth Rathgeber
2032 Hwy. 20
Decatur, AL 35601

**BFI WASTE SYSTEMS OF ALABAMA, LLC**
c/o CT Corporation System
2. North Jackson St.; Suite 605
Montgomery, AL 36104

23

**BFI WASTE SYSTEMS OF NORTH AMERICA, LLC**
c/o CT Corporation System
2. North Jackson St.; Suite 605
Montgomery, AL 36104

**JUSTIN WHITE**
381 Boys Ranch Road
Hartselle, AL 35640-8007